## COTTEN vs. THOMPSON.

1. Where a part owner of a slave has possession, claiming only an undivided half interest, and acknowledging the title of the other part owner to the other half, his possession is not adverse; although " he refused to deliver the possession to any one until his portion should be allotted to him."
2. The discharge of a levy, on account of the plaintiff's failure to give a bond of indemnity when required by the sheriff, destroys the lien on the property, and thus gives effect, as against a subsequent levy, to a deed executed by the defendant while the execution was in the sheriff's hands, but before it was levied.
3. Where the claimant's bill of exceptions shows an erroneous affirmative charge against him, the objection cannot be raised, to prevent a reversal in his favor, that the bill of exceptions purports to set out all the evidence in the cause, and does not show that the claimant proved the consideration of his deed from the defendant, although it was executed after the rendition of plaintiff's judgment : that point cannot be raised in the appellate court, when no objection was made to the reading of the deed in the court below, and no charge asked in reference to the effect of this deficiency of proof upon the rights of the parties.

APPEAL from the Circuit Court of Talladega.
Tried before the Hon. NAT. COOK.

TRIAL OF THE RIGHT OF PROPERTY in a slave named Bill,
between the appellee, as plaintiff in execution, and the appel-
lant, as claimant. The plaintiff's execution was levied on the
slave, with others, on the 12th December, 1848, as the property
of Solomon Spence, the defendant in execution ; and the claim-
ant derived title under a deed of trust executed to him, as
trustee, by said Spence, on the 16th July, 1846.

At the time of the levy of plaintiff's execution, the slave
was in the possession of one Joseph N. Savery, who was intro-
duced as a witness by plaintiff, and who testified, that the
slave had been in his possession for several years prior to the
said levy,—that he claimed to own an undivided half interest
in the slave, and had always admitted that the other half in-
terest was in said Spence, and that said Spence was really the
owner of an undivided half interest at the time of the levy,
and had been such owner for some years prior thereto. The
plaintiff also proved the value of the slave, and then rested
her case.

The claimant then offered in evidence, and read without
objection, so far as the bill of exceptions discloses, the deed
of trust under which he claimed, dated July 16, 1846, and the
certificates of probate and registration thereon endorsed,
showing that it was proved before the clerk of the County
Court on the day of its date, was deposited in his office for
registration on the same day, and was recorded on the 21st
July, 1846 ; and then read in evidence the endorsements on a
former execution issued on the judgment in favor of the plain-
tiff against Spence ; one endorsement is by Josiah Terry,
sheriff of Talladega, and is dated the 1st day of January,
1849 (?), which shows a levy on the slave in controversy, with
others, and a release of the others for want of a bond of in-
demnity, and the claim of Cotten to the slave now in contro-
versy ; and the other is an endorsement of Messrs. White &
Parsons, attorneys for the plaintiff, dated March 1st, 1847 (?),
and is in these words : " The sheriff will return this execution
without selling the property." The claimant also introduced
evidence tending to show that the sheriff had called on plain-

tiff's attorney for a bond of indemnity, as stated in his return above mentioned, and such bond was not given; that Savery had told Spence, in the year 184–, that he knew where there were certain slaves belonging to one Francis Mitchell, and if Spence would get an execution against said Mitchell he would show the property, if he (Spence) would have it levied upon, buy it in himself, and give Savery one half of it,—to which Spence assented; that a judgment against Mitchell was accordingly bought by Spence, for about $300; that Savery showed the slaves that had been levied on in this case, and they were levied on and sold, at the instance of Spence, by the sheriff of Coosa county; Spence bought them in his own name, and all of them (except a boy named Henry) went into possession of Savery, and there remained until the — day of ——, 1848, when he (Savery) delivered them to the sheriff of Talladega county; while in his possession, Savery worked and employed the slaves, but constantly claimed only an undivided interest of one half, and admitted that Spence was the owner of the other half; but he refused to deliver the property to any person, until his portion should be allotted to him; Spence knew that this was the character of Savery's possession, from the time he received the slaves up to the time he delivered them up; they were once levied on in his hands by the sheriff (in 1845) on an execution against Spence, but he refused to surrender them; he was, however, willing that Spence's interest should be sold. The claimant here rested his case.

The plaintiff read, by way of rebutting evidence, all the executions which had been issued on her judgment against Spence, with the endorsements thereon. The first, dated April 1st, 1846, is endorsed levied on sundry slaves (who are named), among them the slave in controversy; and a further endorsement by the sheriff shows that he required indemnity from the plaintiff before he would sell, which was not given, and the slaves were released from the levy on the 18th September, 1846. The second execution, dated 20th (?) February, 1847, was levied on the same slaves on the 19th (?) February, 1847, and under the written directions of the attorneys for the plaintiff, was returned without selling the property levied on. The third *fi. fa.* is dated 15th June, 1847, and is returned

*nulla bona.* The fourth is dated 2d November, 1847, and is returned with a like endorsement. The fifth is the *fi. fa.* under which the claim in this case is made. The plaintiff then showed by proof, that Spence had recovered the slaves of Savery in an action of detinue, and that the latter delivered them to the sheriff in 1848, under the judgment in detinue in favor of Spence; that at and before the delivery aforesaid, the sheriff had in his hands the *fi. fa.* of the plaintiff, with a bond of indemnity as to the slave in controversy.

This being all the evidence, the court then charged the jury, among other things, as follows: 1st. That if, at the time the deed was made from Spence to Cotten, Savery held the slaves, claiming to be the owner of one half interest in the whole of them, and was unwilling to part with his possession until his interest was adjusted to his satisfaction, and that his claim and possession were known to Spence when he made the deed to them, then said deed was inoperative except as between Spence and Cotten; that if, after the making of the deed, Savery delivered up the slaves to the sheriff, in accordance with the judgment in detinue, then the deed of trust would become operative from that time, and would, so far as that is concerned, convey the property.

2d. That, if the plaintiff allowed the lien of her execution to become dormant, or destroyed, by refusing to indemnify the sheriff to sell the slave, or by ordering the sheriff to return her execution, with directions not to sell the property levied on,—still, if she had sued out another *fi. fa.* on said judgment, and had it in the hands of the sheriff on the 8th day of December, 1848, the time the slave was delivered to that officer under the judgment in detinue, and the plaintiff had before that time indemnified the sheriff to levy on and sell the slave, then the lien of the plaintiff's execution would be revived from the date of such indemnity.

These charges, which were severally excepted to, are here assigned for error.

RICE & MORGAN, for the appellant:

1. When the levy of an execution is discharged, in consequence of the refusal of the plaintiff to give a required bond of indemnity, its lien is suspended, and must yield to the title

of a *bona fide* purchaser or mortgagee from the defendant, acquired before a bond of indemnity is executed.—Otey v. Moore, 17 Ala. 280. A lien lost by such refusal of a plaintiff to give bond of indemnity, cannot be revived as against one who *bona fide* purchases, or takes a mortgage, before the bond of indemnity is given.

2. Each charge of the court is directly opposed to the decision of this court, when this case was here at a former term. Cotten v. Thompson, 21 Ala. 574. It is clear that, even if Savery and Spence had been joint owners, Spence had the right to mortgage the slave to Cotten, as he did do on the 16th July, 1846 ; and that if this mortgage was *bona fide*, (which was not even disputed,) it conveyed to the claimant all the right and interest of Spence in the slave. The fact that one tenant in common holds possession of a slave, claiming only an undivided half interest, and always admitting the other half interest to belong to his co-tenant, cannot deprive the co-tenant from making a valid mortgage or deed of trust of such slave. But here the appellee proved that Spence had actually recovered the slaves from Savery in detinue. This judgment in detinue, remaining unreversed, conclusively proves that Savery had no title, and that Spence had the entire title. Whether Spence had the entire title, or only a title to an undivided half of the slave, he had the right to make the mortgage to the claimant in July, 1846, and thereby parted with all his title, whatever it was. If half the slave belonged to Savery, and the other half belonged to the claimant under the mortgage of July, 1846, the slave was not subject to the execution.

The appellee contends, that the possession of Savery, as shown in evidence, was adverse to Spence, in July, 1846, and that therefore the mortgage of 16th July, 1846, to claimant, was void. The appellant denies that the possession of Savery was adverse to Spence ; for Savery himself only claimed the half interest in the slave, and always admitted the other half interest to be in Spence. The possession of one tenant in common is the possession of both, especially when the one in possession always admits the right and title of his co-tenant to one undivided half of the property.

But, if the possession of Savery was adverse to Spence, still

the plaintiff in execution could not, for that cause only, avoid the mortgage made by Spence to the claimant. If Savery's possession was adverse, Savery might, perhaps, avoid the mortgage for that cause, if it were set up against him; but conceding that Savery (the adverse holder) could protect his possession by avoiding the mortgage because of his adverse possession, it is clear the plaintiff in execution cannot avail herself of any such objection to the mortgage on a trial of the right of property. The doctrine of adverse possession, however, has nothing to do with the case, as was in effect decided by this court when the case was here at the former term; for the facts then were, on this point, substantially the same as shown by the present record.

The rights of the claimant were disregarded in each charge given. It is clear that there was no lien on the slaves under the execution at the time the mortgage was executed by Spence to claimant; that Spence, by Savery's uniform admissions, and all the other evidence, owned at least one half of the slave at the time the mortgage was executed; and that the mortgage was not even pretended to be fraudulent. Yet, because Savery (who is no party to the execution) claimed to own the other half of the slave, and had possession so claiming, the court below ruled, in effect, that the slave was subject to the execution.

It is argued for the appellee, that the judgment should be affirmed, notwithstanding the error in the charges, merely because the record shows that the claimant's deed was executed subsequently to the rendition of the appellee's judgment, and does not show that its consideration was proved otherwise than by the recitals in it. This identical argument has been previously made in this court, and without success. The answer to it, found in several decisions of this court, is, that the point was not made in the court below, and cannot therefore be considered here.—Castillo & Keho v. Thompson, 9 Ala. 937; Eckford v. Wood, 5 ib. 136; Morrison v. Judge, 14 ib. 182; Brock v. Yongue, 4 ib. 584; Williams v. Cannon, 9 ib. 348; Spivey v. McGehee, 21 ib. 417; Nabors v. Camp, 14 ib. 460; Carlisle v. Hill, 16 ib. 398; Marshall v. Betner, 17 ib. 836.

WHITE & PARSONS, *contra;*

1. The record sets out all the evidence ; and it also shows that the two charges excepted to were given by the court, "among others." The plaintiff in execution obtained her judgment on the 31st day of March, 1846 ; and the deed of trust under which the claim was made by Cotten, was not executed until the 16th day of July—three months and a half afterwards. The record shows that the claimant did not offer one particle of proof by way of sustaining the consideration of his deed, but he seems to have relied on the instrument itself, and its recitals, as sufficient for that purpose. In this, we insist, the decisions show he was wrong. This court decided, in Nolen & Thompson v. The Heirs of Gwyn, 16 Ala. 725, that "where a subsequent purchaser insists that, as against a prior grantee whose deed has not been recorded, he is a *bona fide* purchaser without notice, it is incumbent on him to prove the payment of a valuable consideration ; the recitals in his deed are not evidence thereof." Where is the distinction, in point of principle, between the case at bar and this case ? A judgment creditor certainly occupies as favorable a position as a purchaser under a deed. The reason is obvious. The judgment creditor has established his debt in the mode prescribed by law ; and as a voluntary conveyance is void against creditors, it is necessary to prove the consideration of the deed, in order to relieve it from this imputation. Branch Bank at Decatur v. Kinsey, 5 Ala. 12 ; McCain v. Wood, 4 *ib.* 264 ; *Doe ex dem.* McGinty v. Reeves, 10 *ib.* 139; McCaskle v. Amarine, 13 *ib.* All these cases bear directly on this question ; but the case in 10 Ala. 139, is very much like the present as to the point under consideration. In that case, the mortgagee claimed title against a purchaser under a judgment creditor of the mortgagor, and it was held that he must prove the consideration of the mortgage.

. But it is said in the argument of counsel for the appellant, that the *bona fides* of this deed was not called in question in the court below. This position is not supported by the record. That shows all the evidence, and it is also stated therein, "this being all the evidence, the court charged the jury, among other things," &c. What "other things" did the court charge the jury ? This court has repeatedly held, that it will

make all reasonable intendments in support of a judgment, not contradicted by the record ; and "where it appears from the bill of exceptions that the plaintiff failed to make out his case, the appellate court will not, at his instance, reverse a judgment rendered against him because the court expressed to the jury an incorrect opinion upon the law, or gave an erroneous reason for a correct conclusion."—6 Ala. 631; 3 *ib.* 599. Again ; this court say, "And whether the charge to the jury laid down the law correctly or not, it worked no injury to him (plaintiff), and the error, if any, does not authorize a reversal of the judgment."—Smith v. Houston, 8 Ala. 741. Many other cases to the same effect might be cited, but we will only refer to one more—the case of Scroggins v. Rowe, at the last term, deciding that where the record set out substantially all the proof, and a fact material to the plaintiff's right to recover was not proved, this court would not reverse, no matter what errors had intervened in the trial below. The fact not proved in that case was this ; the suit was in the name of Scroggins as trustee for his wife under the "woman's law," and there was no evidence to show that he was in fact her husband ; this court held it was fatal. We insist, the failure to prove any consideration to support this claim renders this deed fraudulent and void as against a prior judgment creditor, and that the court ought to have charged the jury, that if they believed all the evidence, they should find the property subject ; and we further insist, this court is bound to declare, on this record and the facts therein set forth, that such is the law.

2. But we also think, there was no error in the charges given and excepted to—first, because a tenancy in common, in personal property of this description, does not and cannot, in the very nature of things, exist at law, or by operation of law. The parties may agree to be tenants in common of a slave, but the law never creates this estate in this species of. property.—See Black. Com., tit. Tenancy in Common, vol. 2. There can be no unity of possession. We insist, further, that if Savery was not, in fact, a tenant in common, then he was a trespasser, setting up a title to one half of the negro, and under color of it keeping exclusive possession of the whole. This proposition seems to be self-evident. The record shows

he was, in fact, not a tenant in common, because he kept Spence out of the possession of any part of the slave; and that he did this without any real right, is shown by the recovery of the slave in an action of detinue by Spence. This establishes in the most conclusive manner another fact,—that Spence's right to this slave was a thing in action, to recover possession of which, he was forced to bring that suit; and thus it is made to appear beyond any dispute, by the record, that Savery's possession was adverse to Spence, at the time Spence made the deed under which Cotten claims, and so continued down to the time when the slave was recovered in detinue, and was, with the others, delivered to the sheriff of Talladega, as Spence's property. When they were delivered to the sheriff, the plaintiff had her execution in his hands, with instructions to levy, and had also indemnified him to do so; both the bond and the execution were in the sheriff's hands before the slave was delivered to him; the lien of the execution attached, therefore, before that of the deed. It is laid down in a note in Blackstone, that when one tenant in common has been in peaceable possession twenty years, it is a good defence to an action of ejectment, because his possession is adverse to the one who is out; but here there is no room for doubt—the record shows that Savery kept exclusive possession of all, under a claim to one half, and that Spence was forced to sue. Where was that "unity of possession" which is an indispensable requisite to a tenancy in common?

LIGON, J.—The questions to be settled here arise out of the two affirmative charges of the court, as no objection, in the court below, to the admission of evidence, was raised by either party.

1. The first charge given by the court is clearly erroneous. If the fullest effect is given to the proof relating to the possession of Savery, it is not adverse to Spence, except as to an interest of one half in the slave in controversy. If all that Savery claims is allowed him, he held the slaves both for himself and Spence, at no time questioning the title of the latter to an undivided one half interest in them. We know of no case which rules such a possession to be adverse: the holding is similar to the possession of tenants in common in real estate, and must be considered in reference to the rules which gov-

ern such tenancies. Under these rules, the case presented is that of one tenant in common in the actual possession and enjoyment of the entire premises, fully recognizing all the title of his co-tenant. In such case, the possession is not adverse, and never becomes so, unless, on demand of the tenant not having the actual possession, he who is in refuses to account with him for the rents and profits, and denies the title of his co-tenant.—2 Black. Com., top page 156, (note 28). Nothing of this kind is shown here; and we have no doubt that the deed to Cotten became operative, as a conveyance of Spence's interest in the slave, from the time of its delivery.

It is true, that, at the time of its execution, the appellee was a judgment creditor of Spence, with a *fi. fa.* on her judgment in the hands of the sheriff; but it is also shown that this *fi. fa.* had been levied on this slave, which was released by the sheriff, because he had doubts as to its being the property of Spence, and had demanded a bond of indemnity of the plaintiff, who failed to give it in the time prescribed by law. This had the effect of destroying the lien of the execution as to this property, up to the time of the levy, and thus gave effect to the deed of Cotten which was made before that period. Otey v. Moore, 17 Ala. 280.

This view is wholly inconsistent with both the charges given in the court below, and we therefore pronounce them erroneous.

It is insisted, however, that although this is conclusive of error in the charges, still, as the record does not show that the claimant proved any consideration for the making of the deed, it is evident the verdict is right, and that the charges amount to error without injury. It is a sufficient answer to this, to say that the record does not show that this point was ever made in the court below; and it is certain that it exerted no influence over the court in producing the erroneous charges given. Under these circumstances, we cannot consider it here, especially as no objection to the reading of the deed was made in the court below, and no charge was asked in reference to the effect of this deficiency of the proof upon the rights of the parties.—Castillo & Keho v. Thompson, 9 Ala. 937; 5 *ib.* 136; 14 *ib.* 182; 16 *ib.* 398; 21 *ib.* 417.

Let the judgment be reversed, and the cause remanded.

CHILTON, C. J., not sitting.