# Robinson *v.* Lehman, Durr & Co.

*Special Action on the Case for Damages, by Landlord against Purchaser of Tenant's Crop with Notice of Lien.*

1. *Landlord's relation to sub-tenant.*—At common law, there was no privity of estate or contract between the landlord and the under-tenant of his lessee, nor could he maintain any action against such under-tenant for the recovery of rent.

26

2. *Landlord's statutory lien and remedies against crop.*—By statutory provisions (Rev. Code, §§ 2961-63), since modified in the interest of sub-tenants (Code, § 3476), a lien was given to the landlord, for the rent of the current year, on the entire crops raised on the rented premises, whether raised by the tenant or by a sub-tenant; but this lien was given to the landlord for his own protection, and he can not be compelled to so exercise his statutory right as to protect or benefit another person who may have a lien on the crop of the under-tenant.

3. *Same; discharge of levy on crop of under-tenant.*—The landlord having sued out an attachment to enforce his statutory lien on the crops, and having afterwards released the levy on the crops of under-tenants who had paid their rent to their immediate landlord, he does not thereby forfeit or impair his right to subject other portions of the crop, or to proceed against a third person who, having knowledge or notice of his lien, has received and sold a portion of the crop; and having brought an action on the case against a merchant who, having made advances to the under-tenants, had received and sold some of the crops raised by them, the latter has no right to insist that the demand shall be credited with the value of the crops so released from the levy of the plaintiff's attachment for rent.

4. *Apportionment of rent and statutory lien.*—Under an entire contract for the rent of a plantation and a ferry appurtenant to it, at an aggregate price, the rent and statutory lien can not be apportioned.

APPEAL from the City Court of Montgomery.
Tried before the Hon. THOS. M. ARRINGTON.

WILLIAMSON & HOLTZCLAW, for appellants.

D. CLOPTON, *contra.*

BRICKELL, C. J.—The plaintiff, on the 7th day of February, 1873, rented to Robert Y. Ware and Mrs. Asenath A. Ware, for the current year, a plantation and ferry, for the aggregate sum of fifteen hundred dollars, payable on the ensuing first day of December; taking a mortgage on several mules, and the crops to be grown on the plantation during the year, to secure the payment of the rent. The tenants entered into possession, and underlet to one Robert Y. Ware, jr., who also underlet to other tenants, and made crops of corn and cotton on the plantation. At different times during the year, to enable Robert Y. Ware, jr., to cultivate the crops, he and Robert Y. Ware, the tenant in chief, obtained advances from the defendants, Lehman, Durr & Co.; giving them mortgages on the crops to be grown and cultivated, to secure the payment of such advances. In November, 1873, Robert Y. Ware, jr., delivered to the defendants, to be applied to the satisfaction of the mortgages, sixteen bales of cotton which had been grown on the plantation; nine bales of which he had raised, and seven bales of which he had received from his tenants for rent and advances. In December, 1873, the plaintiff, claiming a landlord's lien for rent, sued out an attachment against his lessees,

which he caused to be levied on corn and cotton belonging to the under-tenant, Robert Y. Ware, jr., and also on corn and cotton belonging to his tenants, all of which had been raised upon the rented plantation. The corn and cotton belonging to Robert Y. Ware, jr., was sold under the attachment, producing three hundred and fifty dollars, which was applied to the payment of the rent. The corn and cotton belonging to his tenants, which was levied upon, and was of sufficient value to have paid the balance of the rent due to the plaintiff, he released to such of the tenants to whom it belonged as remained upon the plantation the ensuing year, whether they had or had not paid to Robert Y. Ware, jr., the rent and advances due him from them. The rental value of the plantation, exclusive of the ferry, was one thousand to twelve hundred dollars; and of the ferry alone, was from three to five hundred dollars. The action is case, to recover of the defendants the value of the sixteen bales of cotton received by them and sold, thereby rendering unavailing the lien of the plaintiff for the payment of the rent due him.

The City Court instructed the jury, that if the attachment sued out by the plaintiff was levied upon crops raised upon the plantation, of value sufficient to pay the rent, and he released a part thereof from levy, the value of the part released must be deducted from the rent due him, although it belonged to under-tenants who had paid their rent to their immediate landlord. The court also instructed the jury, that the plaintiff had a lien on the crops, only for the payment of so much of the aggregate rent as was the fair rental value of the plantation, exclusive of the rental value of the ferry. The court refused, on the request of the plaintiff for instructions to the jury, to instruct them that the defendants had no right to complain that he had released to the under-tenants, who had paid their rents to their landlord, such parts of the corn and cotton levied upon as belonged to them. These rulings of the City Court are now assigned as error.

The statute of force when these transactions occurred gave to the landlord a lien on the crop grown on rented premises, for the rent of the current year.—Rev. Code, §§ 2961–63. The lien extended to the entire crop raised on the premises, whether it was the product of the labor of the original lessee, or of under-tenants leasing from him.—*Givens v. Easley*, 17 Ala. 385. There was not then, as there is now, a statutory provision requiring the landlord to exhaust the crops of the original lessee, before resorting to and subjecting the crops of the under-lessee. The liability of the crop of the under-tenant to pay the rent of the original lessee was purely and strictly statutory. For, by the common law, between the lessor and the tenant of his lessee

there was neither privity of estate, nor of contract, and for the recovery of rent the lessor could maintain no action against the under-lessee. When he paid rent to his immediate landlord, he was discharged from all liability.—Taylor Land. & Ten. § 484. The purpose of the statute was not to fix upon the under-lessee a personal liability for the rent owing by his immediate landlord, but the primary appropriation of all crops grown on the rented lands, to the payment of the rent accruing for the current year, without regard to the ownership of the crops, or the agencies employed in producing them. The lessor had the option, now qualified by statute, to proceed and charge the crop of his own tenant, or of the under-tenant, or to proceed and charge both crops indiscriminately. The option was given simply to secure to him the payment of the rent issuing out of the premises. But what of reason or justice is there in compelling him to an exercise of the option so that other creditors may be let in to enforce subordinate liens or charges upon the crops of the original lessee? If the under-lessee had paid rent to his landlord,—and that is the predicate of the instruction requested by the appellant,—it would be simple injustice to compel the original landlord to proceed against his crops, for the exoneration of the crops of the original lessee; an injustice a court of equity would prevent, if the crop of the original lessee was sufficient for the payment of the rent. Or, if the under-lessee has not paid his rent, upon what principle can the landlord be compelled to pursue his crop, to make room for the admission of other creditors of the original lessee to charge his crops?

The principle is general and equitable, that if a creditor has a lien on, or interest in two funds, as a security for his debt, and another creditor has a lien on or interest in one of them only for the security of his debt, he who has the security of the two funds shall not unnecessarily so exercise his right of recourse upon them as to disappoint him who has the security of one only. The principle is, of itself, a pure equity, founded on high considerations of justice, and is never applied so as to work injustice. In its operation, it is confined to cases where two or more persons are creditors of the same debtor, and have successive demands upon the same property, the one prior in right having other securities. It has no application as between creditors of different persons.—1 Story Eq. §§ 633, 641–43. "We have gone this length," said Lord Eldon, in *Ex parte Kendal* (17 Vesey, 520), "if A has a right to go upon two funds, and B upon one, having both the same debtor, and the funds are the property of the same person, A shall take payment from that fund to which he can resort exclusively, so that both may be

paid.   But it was never said, that if I have a demand against A
and B, that a creditor of B shall compel me to go against A,
without more.   If I have a demand against both, the creditors
of B have no right to compel me to seek payment from A, if
not founded in some equity, *giving B, for his own sake*, as if
he were surety, &c., a right to compel me to seek payment of
A.   It must be established that it is just and equitable that A
*ought to pay in the first instance*, or there is no equity to com-
pel a man to go against A, who has resort to both funds." And
upon this basis, the doctrine is established in this country.—2
Lead. Cases Eq., 4th Am. ed. 273 ; *Dorr v. Shaw*, 4 Johns. Ch.
17 ; *Reynolds v. Tooker*, 18 Wend. 591.

The appellees were not creditors of the under-tenants, nor
had they any lien upon the crops which were raised by them.
The lien of their mortgage extends to and embraces only
the crops of the original lessee, and there is no justice in their
claim that the crops of the under-tenants should be charged
primarily with the payment of the rent due from the original
lessee, that they may be paid.   The City Court erred in the
first instruction given the jury, and in the refusal of the one
requested by the appellant.

It is insisted, however, that although there may be error in
the giving and refusal of these instructions, it is error without
injury, as it appears that the appellant had not the lien of a
landlord, but the right and title of a mortgagee, and the present
action is therefore misconceived.   The answer is, that the re-
cord does not show this point was made in the City Court ; and
it is clear that it had no influence in inducing the rulings of
the court we have pronounced erroneous.   Under these circum-
stances, it would not be just, if this proposition is well founded,
now to make it the ground of affirmance.—*Cotton v. Thompson*,
25 Ala. 671.

The lien given the landlord was by the statute limited to the
rent of the premises upon which the crops were raised—it did
not extend to the rent of other premises, or to any other debt
or demand.   If the ferry had been rented separately from the
plantation ; or, if in the contract of renting a distinct rent had
been fixed upon it, from that fixed upon the plantation, and a
single obligation taken for the aggregate rent ; if the lien of the
landlord was not thereby discharged, it may be the second in-
struction given by the City Court would assert a correct legal
proposition.   The contract of renting was, however, entire—for
the plantation and ferry, the ferry passing to the lessee as a
mere appurtenance to the plantation.   It may have enhanced
the rent, as improvements upon the plantation would have en-
hanced it ; but there is no principle upon which the rent can

be apportioned, and the rental value of the ferry separated from the rental value of the plantation.

The judgment of the City Court must be reversed, and the cause remanded.